**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5060-17T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MANUEL RAMIREZ,
a/k/a BIMPY,

     Defendant-Appellant.

_____

Submitted August 27, 2019 – Decided September 4, 2019

Before Judges Gilson and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 11-11-1906.

Joseph E. Krakora, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).

Mark Musella, Bergen County Prosecutor, attorney for respondent (Nicole Paton, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Manuel Ramirez appeals from a January 12, 2018 order denying his petition for post-conviction relief (PCR). We affirm.

A jury convicted defendant of second-degree reckless manslaughter, N.J.S.A. 2C:11-4(b)(1), as a lesser-included offense of murder, and two counts of third-degree hindering by flight and providing false information, N.J.S.A. 2C:29-3(a)(2) and (b)(4). We upheld defendant's convictions and sentences, but remanded for a restitution hearing and amendment of the judgment for reasons unrelated to this appeal. State v. Ramirez, No. A-5307-12 (App. Div. March 4, 2016) (slip op. at 1).

We recite the relevant facts from our prior decision:

> [D]efendant was attending a party with several friends, including Gabriel Pujols and Frederick DeLeon. Pujols and DeLeon both testified that they and defendant were members of the Dominicans Don't Play (DDP) street gang.
>
> During the evening, defendant, Pujols and another acquaintance left the party to go to a deli. While at the deli, there was a confrontation involving several individuals, including a former member of DDP and members of another Dominican street gang. The confrontation at the deli involved verbal exchanges, but did not escalate into a physical fight, and the two groups involved went their separate ways.

A-5060-17T3

Later that evening, defendant was driving with Pujols, DeLeon and DeLeon's former girlfriend, C.C.[1] to drop C.C. home. While driving, defendant saw several people in front of a house and recognized some of the people as individuals from the earlier confrontation at the deli. Defendant made a U-turn, parked the car near the group, and Pujols and DeLeon exited the car. There was conflicting testimony at trial as to whether defendant also got out of the car. DeLeon then threw beer bottles at the group and the group of men began to run, with Pujols and DeLeon pursuing them. Pujols caught V.G. [the victim], who he mistakenly thought was someone he had confronted earlier at the deli. Pujols and DeLeon then physically attacked V.G. and during that assault, Pujols pulled out a knife and stabbed V.G. three times. DeLeon testified that defendant also participated in the assault and kicked V.G. twice. Pujols, in contrast, testified that defendant was not involved in the assault. After V.G. was stabbed, defendant, Pujols and DeLeon fled the scene in the car. V.G. was taken to a hospital and died eight days later of his stab wounds.

Defendant, Pujols and DeLeon were arrested and charged in connection with the death of V.G. Defendant gave a statement to the police denying his involvement in the stabbing incident. Defendant also denied having any current gang affiliation. The trial judge found defendant's statement admissible, and it was presented to the jury. Defendant elected not to testify at trial.

Before trial, the State moved to admit evidence that defendant was a member of a street gang as proof of motive for the stabbing. Specifically, the State wanted to have witnesses testify about defendant's gang

---

[1] We use initials for witnesses and the victim to protect privacy interests.

A-5060-17T3

affiliation and how that affiliation played a role in the murder of V.G. The State also proposed to have an expert testify as to how Dominican street gangs operated. The trial court conducted a hearing, and found that the gang-related evidence was admissible pursuant to N.J.R.E. 404(b) to show motive. The judge also allowed testimony from the State's expert on street gangs.

Pujols and DeLeon pled guilty to aggravated manslaughter and testified as witnesses for the State at defendant's trial. As part of its case-in-chief, the State also presented testimony from C.C. She testified that before the stabbing, she heard defendant, Pujols and DeLeon discuss that they were upset about their friend being "jumped" and they all said they wanted "to do something about it."

[Id. at 2-4.]

Defendant filed a certification in support of his PCR petition alleging ineffective assistance of trial counsel. Specifically, he asserted the following claims:

I . . . did not have discovery and was in the dark about many of the allegations against me. I feel I could not properly defend myself because I was unaware of the evidence against me. The State came to my prison cell and took my discovery because my co-defendant allegedly sent me an incriminating letter; however, my attorney never gave me any discovery after that and I had requested such several times.

. . . My attorney also failed to negotiate a plea offer on my behalf and I was not given the names of the witnesses who were going to testify against me.

4

Defendant argued he was entitled to an evidentiary hearing to prove his claims.

The PCR judge issued an oral decision. He concluded defendant had not made a prima facie showing of ineffective assistance of counsel because there was "no other independent or corroborating evidence" to support the claim defendant did not receive discovery or had expressed a concern regarding missing discovery before trial. The judge noted the "matter was thoroughly litigated and the parties, including . . . defendant, w[ere] aware of the discovery." The judge found defendant acknowledged receiving discovery and did not identify what was missing. He concluded even if defendant had identified the missing discovery, there was no evidence its absence had prejudiced defendant or the outcome.

The judge signed the order denying defendant's petition. This appeal followed.

Defendant raises the following point on appeal

> THIS MATTER MUST BE REMANDED FOR AN EVIDENTIARY HEARING BECAUSE DEFENDANT ESTABLISHED A PRIMA FACIE CASE OF TRIAL COUNSEL'S INEFFECTIVENESS FOR FAILING TO PROVIDE HIM WITH CONFISCATED DISCOVERY, INCLUDING THE NAMES OF THE WITNESSES WHO WERE GOING TO TESTIFY AGAINST HIM.

A-5060-17T3

I.

To establish ineffective assistance of counsel, defendant must satisfy a

two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.
>
> [State v. Fritz, 105 N.J. 42, 52 (1987) (alteration in original) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)).]

Counsel's performance is evaluated with extreme deference, "requiring 'a

strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance[.]'" Fritz, 105 N.J. at 52 (quoting Strickland,

466 U.S. at 688-89). "To rebut that strong presumption, a [petitioner] must

establish . . . trial counsel's actions did not equate to 'sound trial strategy.'" State

v. Castagna, 187 N.J. 293, 314 (2006) (quoting Strickland, 466 U.S. at 689).

"Mere dissatisfaction with a 'counsel's exercise of judgment' is insufficient to

A-5060-17T3

warrant overturning a conviction." State v. Nash, 212 N.J. 518, 542 (2013) (quoting State v. Echols, 199 N.J. 344, 358 (2009)).

To demonstrate prejudice, "'actual ineffectiveness' . . . must [generally] be proved[.]" Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 692-93). A defendant must show the existence of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Ibid. (quoting Strickland, 466 U.S. at 694). Indeed,

> [i]t is not enough for [a] defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test . . . and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding.
>
> [Strickland, 466 U.S. at 693 (citation omitted).]

To sustain this burden, defendant must articulate specific facts to "provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992). Defendant "must do more than make bald assertions that he was denied the effective assistance of counsel." State v. Petrozelli, 351 N.J. Super 14, 23 (App. Div. 2002) (quoting State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999)); see also Rule 3:22-10(b).

7

A PCR judge should grant evidentiary hearings only if a defendant has presented a prima facie claim of ineffective assistance of counsel. State v. Preciose, 129 N.J. 451, 462 (1992). To do so, defendant "must allege facts sufficient to demonstrate counsel's alleged substandard performance[,]" Cummings, 321 N.J. Super. at 170, and "must demonstrate a reasonable likelihood that his or her claim will ultimately succeed on the merits." Marshall, 148 N.J. at 158 (citing Preciose, 129 N.J. at 463). Moreover,

> [i]f the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to post-conviction relief, . . . or that the defendant's allegations are too vague, conclusory, or speculative to warrant an evidentiary hearing, . . . then an evidentiary hearing need not be granted.
>
> [Ibid. (citations omitted); see also Rule 3:22-10(e).]

"[W]here the [PCR] court does not hold an evidentiary hearing, we may exercise de novo review over the factual inferences the trial court has drawn from the documentary record." State v. O'Donnell, 435 N.J. Super. 351, 373 (App. Div. 2014) (citing State v. Harris, 181 N.J. 391, 420-21 (2004)). Thus, if warranted, we may "conduct a de novo review of both the factual findings and legal conclusions of the [trial] court." Harris, 181 N.J. at 419.

A-5060-17T3

## II.

We affirm substantially for the reasons expressed by the PCR judge and add the following observations. As we recounted in our prior decision, there was no mystery as to the underlying facts, or the participants in the events that occurred prior to, or during, the assault on V.G. Defendant received the State's list of potential witnesses prior to the commencement of trial. Moreover, the record supports the judge's conclusion the matter was "thoroughly litigated" and defendant did not want for discovery. Defendant's counsel filed pretrial motions and participated in pre-trial evidentiary hearings, that collectively spanned a seven-day period, prepared an opening and a summation, which demonstrated he had a firm grip on the facts and defendant's defense of the allegations, and effectively cross-examined more than two dozen of the State's witnesses during trial. For these reasons, notwithstanding defendant's failure to specifically articulate the discovery he lacked or the witness testimony he would have adduced, there was no prejudice caused by counsel's performance to warrant an evidentiary hearing.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5060-17T3